UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NANCY A. MORENO and MONTI MORENO, | Case No. 18-CV-2760 (PJS/DTS) |
| Plaintiffs, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

Robert B. Bauer and William M. Topka, DOUGHERTY, MOLENDA, SOLFEST, HILLS & BAUER P.A., for plaintiffs.

Charles F. Webber and Jessica Z. Savran, FAEGRE BAKER DANIELS LLP, for defendant.

Plaintiffs Nancy and Monti Moreno ("the Morenos") borrowed money to purchase real property.[1] The loan was secured by a mortgage on the property. The Morenos failed to repay the loan, and defendant Wells Fargo Bank, N.A. ("Wells Fargo") initiated foreclosure proceedings. Before the foreclosure sale took place, however, the property was damaged by a hail storm and then by a fire. The homeowners insurer paid $190,515.90 for the damage. Wells Fargo placed the insurance proceeds in an escrow account until the Morenos repaired the property. The

---

[1] Only Monti Moreno signed the loan. *See* ECF No. 31-1 at 3. Both Monti and Nancy Moreno signed the mortgage. *See* ECF No. 31-1 at 15. For ease of reference, and because any distinctions between the Morenos do not affect the Court's analysis, the Court will simply refer to "the Morenos."

Morenos never repaired the property, however, so Wells Fargo never transferred the insurance proceeds to them.[2]

Wells Fargo then purchased the property at the foreclosure sale. The purchase price fell well short of the amount of money owed by the Morenos, as the value of the property had been significantly reduced by the (unrepaired) hail and fire damage. The Morenos redeemed the property from Wells Fargo. A dispute then arose over whether the Morenos or Wells Fargo was entitled to the escrowed insurance proceeds. The Morenos brought this action to settle that dispute.

Wells Fargo moved to dismiss all of the Morenos' claims, save for their breach-of-contract claim. The Court granted Wells Fargo's motion in an order dated April 1, 2019. Wells Fargo has now moved for summary judgment on the remaining claim. Also before the Court is a motion to strike filed by the Morenos. For the reasons that follow, the Court denies the Morenos' motion and grants Wells Fargo's.

---

[2]Evidence submitted by Wells Fargo in connection with its reply brief suggests that it paid out $4,838.63 in insurance proceeds to the Morenos and that only $185,677.27 remains in escrow. ECF No. 37-1 at 1, 3. But the Court is disregarding that evidence (for reasons described below), and thus the Court will refer to the amount in dispute as $190,515.90.

# I. BACKGROUND

The Court thoroughly described the facts in its April 1 order. ECF No. 21 at 2-6. The Court recounts here only those facts that are relevant to Wells Fargo's summary-judgment motion.

In 2004, the Morenos borrowed $333,700 from Central Bank to purchase a lot with a house and a barn in Marine on St. Croix, Minnesota. ECF No. 31-1 at 1-3; ECF No. 1-1 at ¶¶ 5-6. The Morenos secured the loan with a mortgage on the property. ECF No. 31-1 at 4-15; ECF No. 1-1 at ¶ 6. Central Bank subsequently assigned the mortgage to Wells Fargo. ECF No. 1-1 at ¶ 6.

Section 5 of the mortgage required the Morenos to maintain insurance on the property to protect "against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods . . . ." ECF No. 31-1 at p. 8, § 5, ¶ 1. Section 5 also provided that, if the property was damaged, Wells Fargo had the right to hold onto any insurance proceeds until Wells Fargo could inspect the property and ensure that the damage had been satisfactorily repaired. *Id.* at p. 8, § 5, ¶ 4. Section 5 further provided that Wells Fargo could keep the insurance proceeds if it "acquire[d] the Property under Section 22 [of the mortgage] or otherwise." *Id.* at p. 9, § 5, ¶ 5.

Section 22 essentially gave Wells Fargo the right to foreclose on the property if the Morenos defaulted under the promissory note and failed to cure. ECF No. 31-1

at p. 14, § 22.  If Wells Fargo obtained the right to keep the insurance proceeds by virtue of having acquired the property under Section 22, then, under Section 5, Wells Fargo could "use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due." *Id.* at p. 9, § 5, ¶ 5.

Years after the mortgage was executed, two unrelated events (a 2008 hail storm and a 2015 fire) caused damage to the Morenos' property and triggered payments totaling $190,515.90 from the Morenos' homeowners insurer.  ECF No. 1-1 at ¶¶ 18, 22.  But the Morenos never repaired the damage—and thus, pursuant to Section 5 of the mortgage, Wells Fargo held the insurance proceeds in an escrow account.  *Id.* at ¶¶ 19, 23-26.

In 2007—prior to either the hail storm or the fire—Wells Fargo commenced foreclosure proceedings on the Morenos' property after the Morenos failed to make the promised repayments on their loan.  ECF No. 1-1 at ¶ 10.  In August 2015, Wells Fargo finally obtained a judgment of foreclosure.  ECF No. 31-1 at 23-30.  The Minnesota court that entered the judgment of foreclosure against the Morenos found that, as of July 10, 2015, the Morenos owed Wells Fargo $521,842.75 in unpaid principal, interest, costs, and fees.  ECF No. 31-1 at p. 24, ¶ 7.

On November 10, 2015, Wells Fargo purchased the property at the sheriff's sale for $187,910. ECF No. 1-1 at ¶¶ 11-12. The amount that Wells Fargo paid for the property at the sheriff's sale was significantly less than the amount that the Morenos had paid for the property when they purchased it in 2004, no doubt reflecting the fact that the barn on the property had been destroyed by a fire and the roof of the house had been damaged by hail. In December 2016, the Morenos came up with $208,263.62 to redeem the property from Wells Fargo. *Id.* at ¶ 14.

At this point, the Morenos had suffered no financial loss as a result of their breach of the promissory note, the hail storm, and the fire. They owned a piece of property worth roughly $200,000 for which they had paid roughly $200,000, their considerable remaining debt to Wells Fargo was erased by the fact that Wells Fargo did not seek a deficiency judgment against them, and they had (presumably) enjoyed many years of rent-free living in their house. At the same time, Wells Fargo had taken a financial bath, as the amount that Wells Fargo recovered from the Morenos was over $300,000 less than the amount that the Morenos owed.

Not satisfied with their good fortune, the Morenos then insisted that Wells Fargo also pay them the $190,515.90 in insurance proceeds that had been escrowed, even though it had been Wells Fargo, and not the Morenos, that ultimately suffered financial

loss on account of the hail storm and fire. ECF No. 1-1 at ¶¶ 18, 22, 25. Wells Fargo refused, contending that the mortgage contract gave it the right to retain the insurance proceeds because it had "acquire[d] the Property" under Section 22 of the mortgage. ECF No. 11 at 2. The Morenos disagreed, contending that, because they redeemed the property after the sheriff's sale, Wells Fargo never "acquired" the property as a matter of Minnesota property law, and thus Wells Fargo had no right to the insurance proceeds. ECF No. 17 at 6-8.

In its April 1 order, the Court agreed with Wells Fargo's interpretation of the contract. *See* ECF No. 21. The Court held that the phrase "acquires the Property under Section 22 or otherwise" was broad enough to reach not just acquiring the property for purposes of Minnesota law, but also acquiring the property by purchasing it at a sheriff's sale. The Court reasoned that the Morenos' interpretation of the contract rendered the phrase "under Section 22 or otherwise" meaningless. The Court explained that, if the phrase "acquires the Property under Section 22 or otherwise" was intended to reach only transactions that qualified as acquisitions under state law, then the phrase could have stopped with "acquires the Property." Adding the words "under Section 22 or otherwise" would serve no purpose—unless the provision was intended to capture a type of "acquisition" that did *not* qualify as an acquisition under state law. Moreover, the type of non-legally-recognized acquisition that the contract had in mind was made

clear by its reference to "Section 22." Section 22 gave Wells Fargo the power of sale—i.e., the right to sell the property in a foreclosure proceeding if the mortgagor defaulted on the promissory note and failed to cure. Accordingly, the Court concluded that it was "difficult to identify any purpose for the provision's use of the words 'under Section 22 or otherwise' unless the provision was meant to capture precisely the type of acquisition at issue here: The purchase of a property at a foreclosure sale." ECF No. 21 at 16.

Under the Court's ruling, then, Wells Fargo was entitled to the insurance proceeds—and, under the contract, Wells Fargo could use the insurance proceeds either to repair the property or to pay amounts that the Morenos had left unpaid under the note. The parties agreed that, as a practical matter, Wells Fargo could not use the insurance proceeds to repair the property, as the property had been purchased by the Morenos, and as Wells Fargo no longer had any legal rights with respect to the property. The parties disputed whether Wells Fargo could use the insurance proceeds to pay down amounts that had been left unpaid under the note.

The Morenos contended that Wells Fargo could not possibly use the insurance proceeds to pay the amounts that they had left unpaid under the note because they were no longer legally obligated to pay those amounts. ECF No. 17 at 8-9. In other words, the Morenos argued that an amount is not "unpaid under the Note" unless the

mortgagor has a current legal obligation to pay that amount to the mortgagee. The Court rejected this argument, finding that the contract unambiguously authorized Wells Fargo to use the insurance proceeds "to pay amounts unpaid under the Note or this Security Instrument, *whether or not then due*." ECF No. 31-1 at p. 9, § 5, ¶ 5 (emphasis added). Thus, the Court found it clear that Wells Fargo could apply the insurance proceeds to any amount that was left unpaid under the note, whether or not that amount was "due"—i.e., whether or not the Morenos were still legally required to pay that amount to Wells Fargo. Because the Morenos left more than $300,000 unpaid under the promissory note, the Court found that—pursuant to the contract—Wells Fargo could use the insurance proceeds to pay down that amount.

Based on the Court's interpretation of the parties' mortgage contract, the Court granted Wells Fargo's motion to dismiss all of the Morenos' claims, save for their breach-of-contract claim. Wells Fargo now moves for summary judgment on that claim. Also before the Court is a motion to strike filed by the Morenos.

## II. ANALYSIS

*A. Motion to Strike*

The Morenos filed a motion asking the Court to strike two declarations that Wells Fargo submitted with its reply brief. ECF No. 39. The Morenos argue that these declarations are new evidence that should not have been submitted for the first time on

reply, and thus ask the Court to strike the evidence or (in the alternative) to award them attorney's fees. ECF No. 40.

As this Court has long made clear, motions to strike affidavits, exhibits, or other materials submitted in connection with a motion for summary judgment are not authorized by either the Federal Rules of Civil Procedure or the local rules of this Court. *See Carlson Mktg. Group, Inc. v. Royal Indem. Co.*, No. 04-CV-3368, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006). If a party believes that there is something wrong with an affidavit, exhibit, or other document—and if the party believes that, because of that problem, the Court should ignore the affidavit, exhibit, or other document—then the party should simply say that in the party's memorandum supporting or opposing the summary-judgment motion.[3] The party should not file a separate "motion to strike" and a separate memorandum supporting that motion.

As a formal matter, then, the Court denies the Morenos' motion to strike. But the Court will also give the Morenos the substance of the relief they seek by disregarding the declarations to which they object. The reason for the Court's decision takes a little explaining:

---

[3]In this case, because the objected-to evidence was submitted in connection with a reply memorandum, the Morenos should have asked the Court to ignore it by filing a letter or seeking permission to file a brief surreply.

Before Wells Fargo filed its motion for summary judgment, the parties agreed to stay discovery until the Court ruled on the motion. ECF No. 23. The parties' stipulation was based on Wells Fargo's assertion "that its motion will not require any factual discovery, as it is based on the application of law to undisputed facts." *Id.* at 1. Wells Fargo then filed its motion for summary judgment, principally arguing that it was entitled to summary judgment because it "applied the insurance proceeds to offset the amount that remained unpaid under the Note"—just as the contract allowed—and thus no reasonable jury could find a breach of contract. ECF No. 28 at 8.

The problem was that Wells Fargo's claim that it had applied the insurance proceeds to the amounts that the Morenos had left unpaid under their note was *not* "undisputed." Moreover, in moving for summary judgment, Wells Fargo submitted no evidence to support its assertion that it had applied the insurance proceeds in this way. In their response, the Morenos pointed to this dearth of evidence. ECF No. 33 at 4-5. That, in turn, caused Wells Fargo to go out and gather evidence and submit it to the Court for the first time in connection with its reply brief. ECF Nos. 36, 37. The Morenos then moved to strike Wells Fargo's evidence, arguing that the evidence should not have been provided for the first time on reply. ECF Nos. 39, 40.

Although the Morenos used an improper procedural vehicle to raise their objection, the Court nevertheless agrees with the substance of that objection. *Cf.*

*Redking Foods LLC v. Minn Assocs. LP*, Case No. 13-CV-0002 (PJS/JSM), 2014 WL 754686, at *4 (D. Minn. Feb. 26, 2014) ("By raising this argument for the first time in its reply brief, RedKing violated Local Rule 7.1(c)(3)(B), which provides that '[a] reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response.' Moreover, 'federal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.' *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007)."). Wells Fargo's supposedly undisputed evidence should have been submitted with its initial summary-judgment motion, which would have given the Morenos a chance to contest the evidence in their response.

Wells Fargo argues that it could not have submitted the evidence with its initial filings "because it didn't yet *have* the evidence" and "only recently ascertained that" the evidence "resided with *Freddie Mac*." ECF No. 42 at 2, 4. But Wells Fargo is just digging a deeper hole for itself. When it moved for summary judgment, Wells Fargo represented to the Court that it had applied the insurance proceeds to the amounts left unpaid under the note. If Wells Fargo "didn't yet *have* the evidence" that its assertion was true—indeed, if Wells Fargo did not even know where that evidence "resided"—then Wells Fargo should not have made the assertion.

Wells Fargo argues that, even if the Court does not consider its evidence, Wells Fargo is still entitled to summary judgment because the burden is on the Morenos to prove their breach-of-contract claim and the Morenos "have failed to adduce any evidence that the insurance proceeds were *not* applied to their loan." ECF No. 42 at 4. This argument conveniently ignores the fact that the Morenos have "failed to adduce any evidence" supporting their breach-of-contract claim because *discovery has been stayed*—and discovery has been stayed because Wells Fargo represented that its summary-judgment motion would be based entirely on *undisputed* facts.

To be clear, the Morenos helped to make a procedural mess of this case. It is unclear why, when Wells Fargo asked the Morenos to stay discovery, the Morenos did not ask Wells Fargo exactly what "undisputed facts" it would be relying on in moving for summary judgment. If the Morenos had asked, Wells Fargo (presumably) would have told the Morenos that it was relying on the fact that it applied the insurance proceeds to the amounts left unpaid under the note. The Morenos then could have informed Wells Fargo that this fact was not "undisputed"—and the Morenos either could have refused to stay discovery, or could have asked to see the evidence on which Wells Fargo intended to rely. Had the Morenos refused to stipulate to staying discovery, or had they asked to see Wells Fargo's evidence, Wells Fargo would have been forced to collect its evidence *before* filing its summary-judgment motion. The

Court is at a loss to explain why the Morenos agreed to stay discovery before asking to see Wells Fargo's evidence—particularly given that the Morenos knew that they would have the burden of proving their breach-of-contract claim and that the evidence they needed to establish a breach of contract was almost certainly in the sole possession of Wells Fargo.

Notably, though, the Morenos do not really raise any of these issues in their motion to strike. The Morenos do not argue that Wells Fargo should have been precluded from submitting evidence at any point during the summary-judgment proceedings, nor do they ask the Court to lift the stay on discovery so that they can challenge Wells Fargo's evidence. And the Morenos do not ask for an opportunity to respond to Wells Fargo's evidence. Instead, the Morenos ask the Court to strike the evidence, or alternatively, to award them attorney's fees—on the theory that they may not have wasted time and money opposing Wells Fargo's summary-judgment motion if this evidence been provided to them up front. *See* ECF No. 40.[4] In other words, the

---

[4]The Morenos never identify the source of the Court's authority to award them attorney's fees. The Court assumes that the Morenos are relying on 28 U.S.C. § 1927, which allows the Court to impose fees against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." The Court cannot conclude that Wells Fargo's attorneys did so here.

The Morenos argue, in essence, that Wells Fargo prolonged the proceedings because if it had disclosed its evidence sooner, the Morenos may not have opposed Wells Fargo's summary-judgment motion but instead may have agreed to settle the
(continued...)

Morenos seem to *agree* with Wells Fargo that this evidence establishes that there was no breach of contract. But, because of the timing of Wells Fargo's *disclosure* of the evidence, the Morenos want the Court to strike the evidence, deny summary judgment, and schedule a pointless trial, at which Wells Fargo will introduce the evidence and likely be awarded judgment as a matter of law. That course of action would make little sense.

That said, the Morenos are correct that Wells Fargo should not have submitted new evidence with its reply brief, and thus the Court will disregard that evidence. Fortunately for Wells Fargo, though, the Court finds that it is entitled to summary judgment based on its alternative theory—that is, based on its argument that, regardless

---

[4](...continued)
case. ECF No. 40 at 4. The Court does not think it likely that an early disclosure of Wells Fargo's evidence would have caused the Morenos to settle, particularly in light of the Morenos' own conduct throughout this litigation. This lawsuit was filed by the Morenos to attempt to exploit perceived loopholes in the mortgage contract to achieve a completely unjust result. In furtherance of their attempt to inflict an injustice on Wells Fargo, the Morenos filed a kitchen-sink complaint, and then made various frivolous arguments in response to Wells Fargo's motion to dismiss (most of) that complaint. The Court doubts that, after being presented with Wells Fargo's evidence, the Morenos would have simply walked away.

Moreover, as the Court already explained, the Morenos themselves contributed to the procedural mess that has been made of this case. At the meet-and-confer, Wells Fargo provided the Morenos with a draft of its summary-judgment memorandum. The Morenos should have taken one look at that draft and told Wells Fargo that the question of how it used the insurance proceeds was a disputed fact, and—given that discovery was stayed—it was inappropriate to rely on this fact when moving for summary judgment. This conversation (one hopes) would have caused Wells Fargo to collect its evidence *before* it filed for summary judgment or to limit its motion to the argument that the Morenos suffered no damages and thus cannot state a breach-of-contract claim.

of what it did with the insurance proceeds, the Morenos suffered no damages and thus cannot recover on their breach-of-contract claim. ECF No. 28 at 8-9; ECF No. 35 at 11-12.

*B. Motion for Summary Judgment*

1. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted).

2. Breach of Contract

To state a claim for breach of contract the plaintiff must establish "'(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'" *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (citation omitted); *see also Costello v. Johnson*, 121 N.W.2d 70, 74 (Minn. 1963) ("plaintiffs have the

burden of proving every essential element of their case . . . ."). The plaintiff must also establish that he suffered damages. *See, e.g.*, *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004) ("A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." (citation omitted)). Because the Morenos cannot establish that they have been damaged in any way by Wells Fargo's alleged breach of the mortgage contract, their breach-of-contract claim fails as a matter of law.

In the mortgage contract, the Morenos assigned to Wells Fargo their "rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note" if Wells Fargo "acquire[d] the Property under Section 22 or otherwise." ECF No. 31-1 at p. 9, § 5, ¶ 5. As the Court previously held, Wells Fargo acquired the property under Section 22, ECF No. 21 at 14-18, and there is no dispute that the amount left unpaid under the note far exceeded the amount of the insurance proceeds. Thus, under the mortgage, the Morenos assigned their rights to the insurance proceeds to Wells Fargo.

Having been assigned the insurance proceeds, Wells Fargo was then required to use those proceeds to either (1) repair the property or (2) pay down amounts left unpaid under the note. ECF No. 31-1 at p. 9, § 5, ¶ 5. Everyone agrees that Wells Fargo did not use the insurance proceeds to repair the property. But there appears to be a dispute (it

is difficult to know if the dispute is "genuine") regarding whether Wells Fargo used the proceeds to pay down amounts left unpaid under the note.

The Court will assume, for the sake of argument, that Wells Fargo did *not* use the proceeds to pay down amounts left unpaid under the note. If that is true, then Wells Fargo breached the contract. Critically, however, the Morenos have not been *damaged* by that breach in any way.

The Morenos have no legal obligation to repay the hundreds of thousands of dollars that they left unpaid under the note. Thus, even if Wells Fargo did not apply the insurance proceeds to the amounts left unpaid under the note—even if Wells Fargo instead used the proceeds to refurbish its headquarters or to throw a lavish holiday party for its employees—its breach of contract would not affect the Morenos in any way, because the Morenos have no liability on the note. By the same token, the only potential remedy that the Court could award in this case—ordering Wells Fargo to fulfill the contract by applying the insurance proceeds as it promised it would—would have no impact whatsoever on the Morenos.[5]

The Morenos make two arguments to the contrary:

---

[5]To be clear, the Court could order Wells Fargo to use the proceeds *either* to repair the property *or* to pay down the amounts left unpaid under the note, but the Court could not choose among these options, as the contract leaves that decision up to Wells Fargo. Wells Fargo would obviously choose to pay down amounts left unpaid under the note, as repairing the property (even if it got permission to do so) would only further enrich the Morenos at Wells Fargo's expense.

First, the Morenos argue that they are entitled to "expectation damages"—i.e., to be put in the position that they would be in if Wells Fargo had not breached the contract. ECF No. 33 at 10-11. The Morenos claim that, to be put in this position, they must be awarded an amount equal to the insurance proceeds (i.e., $190,515.90). *Id.* That makes no sense. As the Court already explained, Wells Fargo did not breach the contract by treating the insurance proceeds as its own; the Morenos clearly assigned those proceeds to Wells Fargo. Rather, Wells Fargo breached the contract by failing to apply the insurance proceeds to the amounts left unpaid under the note. Had Wells Fargo *not* breached—had it applied the proceeds to the amounts left unpaid under the note—the Morenos would not have ended up $190,515.90 richer. Instead, the Morenos would have found themselves in precisely the same position as they are today: owing nothing on the note.

Second, the Morenos argue that if the Court concludes that they suffered no damages as a result of Wells Fargo's breach, then the Court will have rendered a provision of their contract meaningless, in violation of Minnesota law. ECF No. 33 at 8. But the rule that courts should give effect to all of the terms of a contract is a "rule of contract interpretation." *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn. 2009). The dispute over whether the Morenos suffered damages is not a dispute over the *meaning* of Section 5. The Court *agrees* with the Morenos that Section 5 requires

Wells Fargo to use the insurance proceeds to repair the property or to pay amounts left unpaid under the note, and the Court *agrees* with the Morenos (at least for purposes of ruling on Wells Fargo's summary-judgment motion) that Wells Fargo breached this provision. But having interpreted the contract and found a breach, the Court nevertheless cannot grant relief to the Morenos unless they demonstrate that they were *damaged* by that breach. For reasons the Court has already explained, this particular breach of this particular provision by Wells Fargo did not damage the Morenos, and thus their breach-of-contract claim must be dismissed.[6]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion to strike [ECF No. 39] defendant's declarations [ECF Nos. 36, 37] is DENIED.

2. Defendant's motion for summary judgment [ECF No. 26] is GRANTED.

---

[6]The Morenos argue that the Court's finding that they were not damaged means that plaintiffs will never be able to state a viable breach-of-contract claim against Wells Fargo for misuse of insurance proceeds. That is obviously untrue. In any case in which the plaintiff remains legally obligated under the note, the plaintiff would be damaged by Wells Fargo's failure to use the insurance proceeds to pay down the amounts left unpaid under the note, and thus the plaintiff would have a viable breach-of-contract claim against Wells Fargo.

3. Count I of the complaint is DISMISSED WITH PREJUDICE AND ON THE MERITS.

4. Because all of plaintiffs' claims have been dismissed, defendant's counter-claim (which is for offset) is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 22, 2020
s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge